UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) - DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION (Dkt. 32, filed on SEPTEMBER 22, 2023)

## I.   INTRODUCTION

On December 17, 2020, plaintiff Rachel Padilla filed this action against defendant Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"). Dkt. 1. Plaintiff alleges three claims for relief against USPS: (1) disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*; (2) age discrimination under the Age Discrimination in Employment Act, 29 U.S.C §§ 621-634; and (3) retaliation, reprisal, and vicarious liability under Title VII, 42 USC § 2000e-3. Id. On June 4, 2021, defendant filed an answer to plaintiff's complaint. Dkt. 9.

Plaintiff's claims arise out of her employment at USPS. Throughout her employment, plaintiff has suffered physical ailments, which at various times have affected her ability to perform her work responsibilities. She has brought multiple claims against USPS. In the present case, plaintiff has brought claims for disability and age discrimination and retaliation based on two specific sets of events. The first was the issuance of a Letter of Warning ("LOW") in June 2019, and the second was a series of events occurring between September 2019, and February 2020. The timeline of events following the issuance of the LOW appears to be as follows. On August 5, 2019, plaintiff sustained a back injury. She was deemed temporary total disabled until her doctor updated her work restrictions on September 18, 2019. Dkt. 32-3, Carrillo Decl., Ex. 3-13. On September 30, 2019, and October 4, 2019, plaintiff accepted an Offer of Modified Assignment ("OMA") at the San Marino Post Office. Id. at Exs. 4-14, 6-17. On November 6, 2019, plaintiff's doctor revised her work restrictions, "such that she

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

could perform her previously assigned mail route." Id. at Ex. 7-19; SDF ¶ 37. On November 13, 2019, plaintiff accepted an OMA to return to the Arcadia Post Office. Dkt. 32-3, Carrillo Decl., Ex. 8-20. On December 3, 2019, Supervisor Linares asked another employee, who already had plaintiff's phone number, to tell plaintiff to return to the Post Office because information on her scanner system was set up improperly. Dkt. 32-4, Linares Decl. at 1; SDF ¶¶ 39-42. On December 12, 2019, Linares' vehicle blocked plaintiff's vehicle in the parking lot, but Linares immediately moved his vehicle when plaintiff told him that his car was blocking hers. SDF ¶¶ 43-47. On January 16, 2020, plaintiff, and another employee, were required to participate in on-the-job refresher trainings, but plaintiff's training was moved to a different location upon her request. SDF ¶¶ 48-54. On January 31, 2020, a USPS employee whom plaintiff alleged did not have a handicap placard was parked in the only handicapped parking spot in the back of the building, but Postmaster Carrillo informed plaintiff that the employee did in fact have a valid placard, and there were other handicapped parking spots available. SDF ¶¶ 55-58.

In January 2020, plaintiff returned to her original Sierra Madre mail route upon her request. Dkt. 51 at 4. Around February 6, 2020, plaintiff gave Carrillo a letter that indicated that she was experiencing knee and heel pain. Dkt. 32-3, Carrillo Decl., Ex. 13-27. Plaintiff worked full shifts until around February 12, 2020. Id. at 6. Thereafter, plaintiff worked partial days until around February 22, 2020, when she "did not return to work and was placed on sick leave." Id. On March 26, 2020, Carrillo mailed plaintiff a District Reasonable Accommodation Committee ("DRAC") form, but plaintiff never responded or requested a reasonable accommodation. Id.; see also id. at Ex. 14-28. On April 9, 2020, plaintiff filed a Notice of Occupational Disease and Claim for Compensation CA-2 form. Dkt. 32-3, Carrillo Decl., Ex. 15-35. On May 5, 2020, plaintiff returned to work. Dkt. 51 at 5.

In this action, defendant filed a motion for summary judgment or, in the alternative, summary adjudication on September 22, 2023. Dkt. 32. Defendant attached a statement of uncontroverted facts and conclusions of law in support of his motion and over 300 pages of declarations and exhibits. Id. On October 2, 2023, plaintiff filed an opposition to defendant's motion for summary judgment, a statement of genuine issues of material fact in dispute, and a declaration. Dkt. 36. On October 6, 2023, defendant filed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

a reply in support of his motion. Dkt. 37. Defendant attached his evidentiary objections to plaintiff's declaration and his response to the statement of genuine disputes. Id.[1]

On October 23, 2023, the Court held a hearing on defendant's motion for summary judgment and ordered supplemental briefing from the parties. Dkt. 40. On October 30, 2023, plaintiff filed a supplemental opposition to defendant's motion for summary judgment and a statement of genuine issues of material fact in dispute. Dkts. 41, 42, ("SDF"). On November 6, 2023, defendant filed a supplemental reply memorandum in support of his motion. Dkt. 43.

On November 13, 2023, the Court held a hearing on defendant's motion for summary judgment or, in the alternative, summary adjudication. The Court directed plaintiff to submit evidence supporting her claim that the work assignments she received after November 2019, did not comply with her work restrictions.[2] Dkt. 50. The Court permitted defendant to file objections or responses to plaintiff's submission. Id.

On November 15, 2023, plaintiff filed a new declaration as directed at the November 13 hearing. Dkt. 51. On November 20, 2023, defendant filed a response and objections to plaintiff's third declaration in opposition to his motion and a supplemental declaration. Dkt. 52.

---

[1] The Court has given plaintiff three occasions to set forth the evidence which she believes supports her claims. In her initial opposition, plaintiff indicated that she disputed some of defendant's uncontroverted facts, without offering any evidence supporting the basis for her disagreement. Dkt. 36. On October 23, 2023, the Court asked plaintiff to provide the evidence supporting her opposition, dkt. 40, and she thereafter submitted two declarations, along with exhibits and portions of plaintiff's deposition transcripts. Dkt. 42. However, the declarations were not executed under penalty of perjury. Id. The Court permitted plaintiff to submit additional evidence by November 15, 2023. Dkt. 50. While this supplemental information has filled in some gaps, plaintiff has offered inconsistent assertions regarding certain of the key events on which her claims are based.

[2] According to defendant, "[p]laintiff's alleged November 2019 failure to accommodate claim should not even be considered as this claim was never raised until [p]laintiff filed her second/supplemental opposition." Dkt. 52 at 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

Defendant's motion for summary judgment or, in the alternative, summary adjudication, along with the parties' papers and supplemental briefs, are presently before the Court. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.

### A.   Plaintiff's Equal Employment Opportunity ("EEO") Complaints

In 2011, plaintiff initiated her first EEO contact (Agency No. 4F-913-0078-11), but she did not file a formal EEO complaint. SDF ¶ 1. In 2013, plaintiff initiated her second EEO contact (Agency No. 4F-913-0061-13), and summary judgment was granted in favor of USPS. Id. ¶ 2. On April 19, 2018, plaintiff initiated her third EEO contact (Agency No. 4F-913-0084-18), and USPS settled the informal complaint on June 28, 2018. Id. ¶¶ 3-4. On October 9, 2018, plaintiff initiated her fourth EEO complaint (Agency No. 4F-913-0005-19), and on January 24, 2019, she filed a formal EEO complaint, which resulted in a Final Agency Decision in favor of USPS on January 21, 2020. Id. ¶ 5.

### B.   Plaintiff's EEO Complaints That Are the Subject of This Litigation

As set forth above, plaintiff's claims in this case are based on her fifth and sixth EEO complaints. On July 28, 2019, plaintiff initiated her fifth EEO complaint (Agency No. 4F-913-0111-19), and her formal complaint filed on November 1, 2019, alleged: "Because of my disability I was not able to walk fast enough for Melody Barajas['] standards due to a comparison [sic] to a young man, But [sic] I am able to complete my entire route in a safe & professional manner. This is a retaliation due to ongoing EEO's." Id. ¶ 6. On December 2, 2019, the USPS National Equal Employment Opportunity Investigative Services Office ("NEEOISO") accepted the following issue for investigation: "You alleged discrimination based on Sex (female), Age (DOB: [redacted] 1970); Disability (To Be Specified) and Retaliation (Prior EEO Activity) when: On June 26, 2019, you were issued a Letter of Warning (LOW)." Id. ¶ 7.

According to plaintiff, on June 18, 2019, Customer Services Supervisor Melody Barajas observed plaintiff during a procedure known as a 3999, "which is a formal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

observation procedure in which a supervisor observes a City Carrier complete his/her mail route to evaluate the City Carrier's efficiency." Id. ¶ 9. Barajas observed plaintiff's walking at a pace of 112 and 118 steps per minute, and plaintiff completed her entire route without assistance by 5:30 PM. Id. ¶¶ 10-11. Defendant alleges that on June 19, 2019, Barajas conducted safety checks and calculated plaintiff's pace to be 80 steps per minute, but when Barajas approached plaintiff to see if she was okay, Barajas observed plaintiff increase her pace to her pace the day before. Id. ¶¶ 12-13. Plaintiff completed her delivery (25 Lima to 560 Montecito in Sierra Madre, California) in one hour on June 18 and in one hour and forty-five minutes on June 19. Id. ¶¶ 10, 14.

Barajas held a fact-finding investigation on June 20, 2019, to determine the pacing variance between June 18 and June 19 and issued plaintiff a LOW on June 26, 2019, for poor performance and for failing to follow instructions, citing "multiple violations of USPS' Handbook." Id. ¶¶ 15-16. Plaintiff asserts that the issuance of the LOW was improper for two reasons. Id. ¶ 12. First, she asserts that Barajas had told her that the observation of her pace on June 18 was not a "true formal observation." Id. Second, plaintiff alleges that because she was not carrying mail on June 18, her observed pace was faster than on June 19 when she was actually carrying mail and walking uphill. Id. Further, plaintiff disagrees that Barajas was unaware of any medical disability afflicting plaintiff when she issued the LOW given plaintiff's "prior work-related injuries and EEO activities."[3] Id. ¶ 17. On July 2, 2019, plaintiff filed a grievance protesting the LOW through her union, the National Association of Letter Carriers, and a settlement agreement to rescind and expunge the LOW was reached on July 8, 2019. Id. ¶¶ 18-19. "Plaintiff testified that other than the fact that it bothered her having the LOW on her record from June 26, 2019 to July 8, 2019, the LOW and the expungement of the LOW had no effect on [p]laintiff's employment with USPS." Id. ¶ 20.

---

[3] At the hearing on October 23, 2023, the Court directed plaintiff to cite admissible evidence in her supplemental opposition. However, plaintiff has failed to provide evidentiary support for several of her assertions, SDF ¶¶ 13, 17, 46, 61, and further, neither of the declarations filed in opposition to defendant's motion were executed under penalty of perjury. Dkt. 42. On November 15, 2023, plaintiff filed a declaration that was executed under penalty of perjury, but several of plaintiff's assertions remain conclusory. Dkt. 51.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

   The following events relate to plaintiff's sixth EEO complaint (Agency No. 4F-913-0043-20). On August 5, 2019, plaintiff sustained an on-the-job back injury, was placed on medical leave, and did not return from medical leave until late September 2019. Id. ¶¶ 26-27. From August 7, 2019, to September 10, 2019, plaintiff's Duty Status Reports ("DSRs") placed her on "TTD" or temporary total disability. Id. ¶ 26. On September 18, 2019, plaintiff provided a DSR, which included updated medical work restrictions, such as "no driving company vehicle," to Postmaster Yvonne Carrillo. Id. ¶ 28. Carrillo determined that there was no work she could provide plaintiff "as limited duty within her medical work restrictions" and that plaintiff "could not perform her previously assigned mail route." Id. ¶ 29. On October 2, 2019, plaintiff's DSR and medical restrictions were again updated, e.g., plaintiff could drive a vehicle four hours intermittently per day. Id. ¶ 33. In response to each DSR, Carrillo worked with the USPS' Injury Compensation Department and determined there was available work within plaintiff's medical work restrictions at the San Marino Post Office. Id. ¶¶ 31, 34. However, plaintiff's first allegation in her formal complaint reflects her belief that there was work at the Arcadia Post Office within her restrictions and that she was given work "detailed as custodian duties at the San Marino Post Office." Id. ¶¶ 31, 34. According to plaintiff, she accepted the OMA (Limited Duty) at the San Marino Post Office on September 30, 2019, even though the work was purportedly outside of her medical restrictions. Id. ¶ 32. On October 4, 2019, two days after her medical restrictions were updated, plaintiff accepted a new OMA at the San Marino Post Office with the effective start date of October 5. Id. ¶¶ 33, 35. Plaintiff testified that "she 'was really happy there and it was within [her] work restrictions,' and that she never actually performed any custodial duties and instead was given an 'office manager position'" there. Id. ¶ 36. Plaintiff alleges that Supervisor Tony Cozul at San Marino realized she was given work outside of her restrictions and instead gave her work within her restrictions. Id. On November 13, 2019, plaintiff accepted an OMA as a City Carrier at the Arcadia Post Office after her doctor revised her medical work restrictions, "such that she could perform her previously assigned mail route." Id. ¶ 37.

   Plaintiff's second allegation in her sixth formal complaint is that Supervisor Marvin Linares gave plaintiff's personal cell phone number to another USPS employee to enable him to relay an order to plaintiff. Id. ¶¶ 39-42. However, according to the employee who was directed to contact plaintiff, he already had her cell phone number. Id. ¶¶ 41-42. Plaintiff does not dispute this fact. Id. ¶¶ 41-42. Plaintiff's third allegation is that Linares' vehicle blocked plaintiff's vehicle in the supervisors' parking lot. Id. ¶¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

42-44. While plaintiff agrees that she did not have permission to park in the supervisors' lot and that Linares moved his car immediately when she told him she could not exit because of his car, she believes Linares "purposefully blocked her in." Id. ¶¶ 45-47. Regarding plaintiff's fourth allegation that she participated in "refresher training regarding how best to use the mail hamper to prevent injuries" after she returned to the Arcadia Post Office, plaintiff alleges she had to bend over in the middle of the workroom and was "made fun of by other employees due to her years of service with the Agency and due to the nature of the training [she] was made to participate in." Id. ¶¶ 48-52. According to defendant, which plaintiff does not dispute, Job Instructor Javier Fernandes agreed to move the training to the outside dock area as plaintiff requested. Id. ¶ 53. Further, as explained above, Fernandes provided "an identical training to another USPS employee." Id. ¶ 54. Plaintiff's fifth allegation is that she could not park in the handicapped parking spot in the back parking lot. Id. ¶¶ 55-58. In response to plaintiff's note to Carrillo, stating that Carrillo had told her she could not park in that handicapped spot, Carrillo informed her "that the back parking lot's handicap[ped] spot was not reserved for any USPS employee." Id. ¶¶ 57-58. Finally, with respect to her sixth allegation about reasonable accommodations, plaintiff agrees she received a DRAC form and filed a Notice of Occupational Disease and Claim for Compensation CA-2 form. Id. ¶¶ 62, 64. However, she alleges she did not request a reasonable accommodation because there was no space to do so on the Notice form and she did not know she could do so on the DRAC form, despite the form asking, "What specific accommodation(s) are you requesting, if known?" Id. ¶¶ 59-65; see also dkt. 32-3, Carrillo Decl., Ex. 14-31.

On February 5, 2020, plaintiff initiated her sixth EEO complaint (Agency No. 4F-913-0043-20), and her formal complaint made on May 14, 2020, alleged:

(1) on October 7, 2019, [p]laintiff was sent to San Marino because there was "No" work at the Arcadia Post Office;[4] (2) on December 3, 2019, Supervisor Customer Services Marvin Linares gave [p]laintiff's personal phone number to another employee; (3) on December 12, 2019, Linares blocked [p]laintiff's car; (4) on January 16, 2020, Barajas "ordered" [p]laintiff to take a training session in the middle of the work area; and (5) on January 31,

---

[4] Plaintiff agrees that she was sent to San Marino on September 30, 2019, rather than on October 7, 2019. Dkt. 42, Exh. 27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

2020, Arcadia Postmaster Yvonne Carrillo did not allow [p]laintiff to park in a handicap[ped] spot, and instead "reserved it for a clerk."

SDF ¶¶ 21-22.  Thereafter, plaintiff made a sixth allegation that "[o]n February 13, 2020, through May 4, 2020, [she was] denied reasonable accommodation when [she was] sent home and told that there was no work available within [her] restrictions."  Id. ¶ 23. According to plaintiff, "while management argues there was no work within her restrictions, she could have done any of the following which were always within her restrictions: case her route, do Express, answer phone calls, take care of customer complaints, front window, pull vacation hold mail or a package, or assist the lobby."  Id. Plaintiff ultimately returned to work on May 5, 2020.  Dkt. 51 at 5.  On June 5, 2020, NEEOISO accepted plaintiff's six allegations for investigation.  SDF ¶ 23.

## III.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e).  The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit."  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324.  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987).  When deciding a motion for summary judgment, "the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997).  Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue.  See Matsushita, 475 U.S. at 587.

**IV.   DISCUSSION**

    **A.   Plaintiff's Disability Discrimination Claim**

       The Court acknowledges that the burden-shifting standard set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to plaintiff's disability discrimination claim.  Dkt. 32 at 9; dkt. 36 at 9-10.  Plaintiff must demonstrate that she (1) has a disability within the meaning of the Rehabilitation Act of 1973, which is governed by the Americans with Disabilities Act ("ADA"); (2) "is a qualified individual able to perform the essential functions of the job with reasonable accommodation"; and (3) "suffered an adverse employment action because of [her] disability."  Allen v. Pac. Bell, 348 F.3d 1113, 1114 (9th Cir. 2003) (citation omitted); see also Gladle v. United States Dep't of Veterans Affs., No. 2:15-CV-00057-CAS-JCX, 2020 WL 4904448, at *8 (C.D. Cal. Aug. 17, 2020) ("Disability discrimination claims brought under the Rehabilitation Act are governed by Americans with Disabilities Act [] standards.").  If plaintiff establishes a prima facie case of disability discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for his allegedly discriminatory conduct.  Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 640 (9th Cir. 2003).  If defendant provides such a reason, the burden shifts back to plaintiff to show that defendant's proffered reasons were not his actual reasons, but a pretext for discrimination.  Id.

       1.   Whether plaintiff is a person with a disability

       Defendant argues that plaintiff has not established she has a disability because her on-the-job injuries are transitory, meaning they had a duration of "six months or less" pursuant to 42 U.S.C. § 12102(3)(B).  Dkt. 32 at 10.  According to defendant, plaintiff sustained a back injury on August 5, 2019, was on temporary total disability until September 10, 2019, and returned from medical leave in late September.  Dkt. 43 at 1. Defendant asserts that plaintiff's September 18 DSR was updated three weeks later on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|----------|--------------------------|------|-----------------|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

October 2 to allow for more mobility and that the doctor revised her work restrictions about five weeks later on November 6, which allowed her to perform her previously assigned mail route.  Id.  He contends that plaintiff provided Postmaster Carrillo with a note that in January 2020 she "could no longer tolerate" right knee pain, which had started in November/December 2019, but she worked full shifts until about February 12, 2020, was placed on sick leave on February 22, and filed a Notice of Occupational Disease and Claim for Compensation CA-2 form on April 9.  Dkt. 32 at 10.  According to defendant, plaintiff's "myriad injuries to different parts of her body demonstrates that any injuries she sustained were transitory."  Dkt. 43 at 2.

Plaintiff argues that she suffers from on-the-job-related injuries to both knees, her back, her right heel, along with carpal tunnel syndrome on both hands and trigger finger on her right thumb, and that her left knee impairment from 2012 did not end when she hurt her back in 2019.[5]  Dkt. 36 at 10-12.  According to plaintiff, her "subsequent injuries in combination with the existing impairment is a result of on-the-job injuries she endured due to the [d]efendant's failure to consistently accommodate her medical restrictions."  Dkt. 41 at 11.  Plaintiff contends that a reasonable jury could find she has a disability because of the substantial limitation from the injuries on her ability to kneel, bend, walk for a long period of time, reach above her shoulder, and otherwise participate in everyday activities.  Dkt. 36 at 12.

For purposes of this motion, the Court assumes that plaintiff has raised an issue of fact as to whether she has a cognizable disability.

> 2.    Whether plaintiff "is a qualified individual able to perform the essential functions of the job with reasonable accommodation"

It appears plaintiff concedes she could not perform the essential functions of a City Carrier, but she argues that defendant failed to reasonably accommodate her.  Dkt. 36 at 13-14.  Defendant cites Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002), to assert that an "employer must engage in an interactive process with the

---

[5] While plaintiff filed a U.S. Department of Labor, Office of Workers' Compensation Programs ("OWCP") form from July 2019, that indicates plaintiff suffered a meniscus tear in her left knee in 2012, defendant contends there is no evidence USPS was aware of plaintiff's complaints to OWCP, and the DSRs at issue in this action do not include any mention of the meniscus tear injury.  Dkt. 37 at 2; dkt. 43 at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

employee to determine the appropriate reasonable accommodation." Dkt. 32 at 12. First, defendant contends that USPS engaged in an interactive process in September and October 2019 by finding plaintiff a reasonable accommodation at the San Marino Post Office. Id. While it appears that plaintiff was initially assigned custodian duties at the San Marino Post Office, plaintiff conceded in her deposition that she never actually performed them and was instead provided work within her restrictions. Dkt. 43 at 4-5; see also dkt. 32-6, Blakey Decl., Exs. 1-5, 1-6.

Second, defendant argues that a reasonable accommodation would not have been effective in February 2020, because plaintiff did not report to work after February 22, 2020. Dkt. 32 at 12. Specifically, defendant states "[o]n or around February 22, 2020, [p]laintiff did not return to work and was placed on sick leave. At no point did [p]laintiff complete a PS Form 3971 Request for or Notification of Absence indicating what type of leave she sought." SDF ¶ 61. While plaintiff states that she disagrees with this contention, she cites no evidence to support the basis for her disagreement. Id. According to defendant, Carrillo nonetheless encouraged plaintiff to request a reasonable accommodation while she was on leave. Dkt. 32 at 13. In this regard, defendant asserts that Carrillo mailed plaintiff a DRAC form in March 2020, but plaintiff failed to respond. Id. While plaintiff claims that she did not know she could request a reasonable accommodation through the DRAC form, defendant demonstrates that the form, which is entitled "Reasonable Accommodation Request," includes instructions and asks, "What specific accommodation(s) are you requesting, if known?" Dkt. 43 at 5. As such, defendant contends that plaintiff in fact did not seek to "engage in the interactive process because she did not want to return to work." Id.

Plaintiff asserts that "[t]he reasonableness of accommodation is ordinarily a question of fact" and that the interactive process is a "continuing obligation." Dkt. 36 at 14; see also U.S. E.E.O.C., 620 F.3d at 1110-11. She argues that although defendant provided her with modified job offers, "[t]here are material factual issues that preclude a determination that [d]efendant had participated in the interactive process in good faith" because her supervisors failed to consider her medical restrictions or provide her with other duties within her restrictions. Dkt. 41 at 14. In her supplemental opposition, plaintiff repeats her assertion that Carrillo gave her a job offer with duties outside the scope of her restrictions even though Carrillo knew plaintiff could do carrier work within her medical restrictions, such as mounted routes, customer complaints, express, and taking mail to other carriers. Id. at 12. However, plaintiff does not provide context for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

this assertion or offer additional evidence to support these claims.  Plaintiff also argues that defendant's "attempts to accommodate" her were "ineffective" because she reinjured herself in February 2020.  Dkt. 36 at 15.  While plaintiff initially alleges that she was injured because Carrillo and Linares "failed to follow her medical restrictions on the workroom floor," she later concedes that she "sustained an on-the-job injury while carrying her route."[6]  Id. at 15, 19.  Further, plaintiff asserts that she "was forced to leave early" multiple times in February after the injury because Carrillo informed her that there was no available work within her restrictions and insisted that she take "sick time" instead of providing her a modified job offer.  Id. at 19; dkt. 41 at 13.  Finally, plaintiff asserts that during the mandatory training Barajas ordered, she was not allowed to "put empty tubs in the bottom of…to create false bottom and minimize bending at waist," which her medical restrictions said she could do.  Dkt. 41 at 12.

Defendant argues that plaintiff ignores the undisputed fact that many of her work restrictions, other than the restriction relating to the mail hampers, prevented her from performing City Carrier duties.  Dkt. 43 at 3.  While plaintiff lists other possible accommodations, defendant contends that she does not provide evidence that these positions were available and, further, employers have "ultimate discretion to choose between effective accommodations."  Id. at 3-4; U.S. E.E.O.C. v. UPS Supply Chain Sols., 620 F.3d 1103, 1111 (9th Cir. 2010) (citation omitted).  Defendant argues that plaintiff does not provide evidence of "mounted" or "express" routes being available, but regardless, plaintiff's "September 18, 2019, medical restrictions expressly stated: 'no driving company vehicle' and the October 2, 2019, restrictions allowed only four hours of driving 'intermittently per day,'" such that plaintiff would not have been able to take these routes.  Dkt. 37 at 4; dkt. 43 at 4.  Regarding plaintiff's alleged reinjury in February, defendant argues that, based on the timing, "any injury was not in any violation of [her] work restrictions."  Dkt. 43 at 5.  Moreover, defendant argues that plaintiff does not provide evidence to controvert the evidence that she did not return a completed Form 3971 Request for or Notification of Absence after she left in February 2020.  Id. at 6.  Finally, while plaintiff alleges that she was not provided a job within her restrictions for

---

[6] Plaintiff also appears to ignore the fact that she gave Carrillo a note on or around February 6, 2020, stating that she began to experience knee pain in November/December 2019 that increased significantly in January 2020, and that she "continued to work till [she] could no longer tolerate it."  Dkt. 32-3, Carrillo Decl., Ex. 13-27.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|----------|--------------------------|------|-----------------|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

two-and-one-half months, defendant asserts that plaintiff never engaged in the interactive process. Id.

Although plaintiff asserts that at various times she was not provided with work assignments consistent with her restrictions, those assignments appear to have been adjusted either before or after plaintiff complained. Even if there were other assignments available at the Arcadia Post Office within plaintiff's work restrictions, it appears to the Court that defendant engaged in an interactive process and provided plaintiff with reasonable accommodations. See U.S. E.E.O.C., 620 F.3d at 1110-11 ("An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." (citation and internal quotation marks omitted)). Thus, defendant fulfilled his obligation. With regard to plaintiff's failure to request an accommodation in the DRAC form, it appears that that form apprised her that she should state whatever accommodations she was requesting. Given that plaintiff failed to respond, there is no evidence that there was a failure to accommodate her after February 22, 2020, when she did not return to work. [7]

> 3. Whether plaintiff "suffered an adverse employment action because of [her] disability"

Defendant argues that plaintiff cannot establish that either the LOW issued by Barajas, who did not know plaintiff had a medical disability, or the temporary assignment to the San Marino Post Office, to accommodate her medical restrictions, occurred "but-for" her disability. Dkt. 32 at 13-14 (citation omitted). He contends that plaintiff does not provide evidence she had any medical restrictions at the time Barajas issued the LOW due to the observed variation in plaintiff's delivery times on June 18 and 19. Id. at 13-14. While plaintiff asserts that the "basis for the [LOW] was clearly inaccurate" because she was not delivering mail, defendant responds that "to claim that Barajas observed [p]laintiff during a 3999 when she was not delivering mail defies the very purpose of the 3999," and further, plaintiff made 519 deliveries on June 18. Dkt. 43 at 7-8.

---

[7] Although plaintiff suggests that she was capable of doing some work during the time she was on sick leave, the fact remains that she never asked for an accommodation on the DRAC form or otherwise until her meeting on May 1, 2020, after which she was given two job offers within her restrictions. Dkt. 32-2, Haley Decl., Ex. 5-178; dkt. 51 at 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

In her supplemental opposition, plaintiff asserts for the first time that other carriers were allowed to use vehicles to deliver mail, but plaintiff was required to use a pushcart, and that when she finally received a vehicle, it was defective.[8]  Dkt. 41 at 12.  Further, plaintiff argues that a jury could reasonably find that defendant would not have issued the LOW, which was rescinded when plaintiff's union contested the charge as improper "because there was no set pace on the street for City Carriers," but-for plaintiff's disability.  Dkt. 36 at 16-17.  In her opposition, plaintiff argues that "motive may be imputed to [] defendant" because Linares mentored but did not inform Barajas about plaintiff's medical restrictions during the investigative interview before Barajas issued the LOW.  Id. at 16.  However, defendant argues that plaintiff does not present "*any* evidence that Carrillo or Linares harbored any purported bias towards her; that Carrillo or Linares ever told Barajas that [p]laintiff had brought disability discrimination claims where they were named as responsible management officials; [] that they knew of or shared any of [p]laintiff's medical restrictions to Barajas" or further, "that they were involved in the decision to issue the LOW."  Dkt. 37 at 7; dkt. 43 at 7.

Further, plaintiff asserts that she accepted a modified carrier position at Arcadia in November 2019, when Carrillo requested that she do so "because a young man had been carrying her previous route," but her supervisors assigned her more burdensome tasks and responsibilities that were inconsistent with her restrictions.  Dkt. 41 at 13.  Plaintiff alleges that Linares blocked her car; that Carrillo did not allow her to park in a particular

[8] Plaintiff initiated her fourth EEO complaint (Agency No. 4F-913-0005-19) on October 9, 2018, and filed the formal complaint on January 24, 2019.  SDF ¶ 5.  As part of her complaint, she alleged "since July 11, 2018, [p]laintiff was forced to deliver her route using a pushcart."  Id.  On January 21, 2020, the Final Agency Decision stated that "the evidence does not support a finding that the complainant was subjected to discrimination as alleged."  Dkt. 32-2, Haley Decl., Ex. 3-159.  Plaintiff contends that her using a pushcart constitutes an adverse employment action and supports her argument regarding pretext.  Dkt. 41.  Several of the exhibits attached to plaintiff's opposition relate to her use of the pushcart.  Dkt. 42.  However, according to defendant, the EEO claims at issue do not concern the use of a pushcart.  Dkt. 43 at 7 n.2.  He argues that this claim is both unexhausted and untimely.  Id.  It appears to the Court that plaintiff's use of a pushcart cannot be an adverse employment action because it occurred a year before the events relevant to the claims before the Court.  Moreover, plaintiff's discrimination claim, which was in part based on the pushcart, was adjudicated against her and in favor of USPS.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|----------|--------------------------|------|-----------------|
| Title    | RACHEL PADILLA V. LOUIS DEJOY | | |

handicapped spot, claimed there was no available work within her restrictions and sent her home, and refused to provide her with a modified job offer; and that Barajas required her to participate in a training in the middle of the workroom, such that she "was being ostracized and singled out by her supervisors."[9] Id.

It appears to the Court that Barajas did not issue the LOW because of plaintiff's disability, about which Barajas did not know. Further, the Court does not find that the other alleged events rise to the level of adverse employment actions. Although plaintiff apparently wanted to use the handicapped spot in the back of the building, it appears that there were other handicapped parking spaces available to her. Further, Linares immediately moved his vehicle when he was told that he was blocking plaintiff's vehicle. With regard to whether plaintiff was required to accept a modified job/carrier position at the Arcadia Post Office in November 2019, plaintiff has failed to set forth specific and admissible evidence as to how her work assignments were outside of her restrictions.[10] See dkt. 51. Further, plaintiff concedes that she returned to her original Sierra Madre route in January 2020. Id. ¶¶ 14-15. Thus, it does not appear that plaintiff "suffered an adverse employment action because of [her] disability."

4.     Whether defendant's actions were pretextual

Finally, defendant argues that plaintiff cannot demonstrate pretext because she cannot prove USPS' reasons were false and based on discrimination, and further, defendant's actions relating to plaintiff's other complaints were not adverse. Dkt. 32 at 15-16. According to defendant, the LOW was issued due to plaintiff's significant pace differential, and USPS attempted to engage in the interactive process both when it

---

[9] Defendant asserts that the grievances regarding parking and training do not relate to her alleged disability. Dkt. 32 at 14. Further, defendant contends that these events are neither discriminatory nor adverse employment actions, and that plaintiff inaccurately characterizes them. Dkt. 43 at 8. In her deposition, plaintiff explained that she believes the training related to disability discrimination because she "can't completely bend over or bend [her] knees properly in front of a gurney and reach in." Dkt. 42, Exh. C at 20-21.
[10] Defendant argues that the Court should dismiss these "new allegations" because "[p]laintiff waited over 4.5 years from the time she filed her EEO complaint and 3 years from the time she filed her Complaint before claiming that [d]efendant allegedly failed to accommodate her in November 2019." Dkt. 52.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

provided her a reasonable accommodation at San Marino and after plaintiff stopped reporting to work in February 2020. Id. at 15.

According to plaintiff, it was improper for defendant to issue the LOW. Dkt. 41 at 19. Plaintiff further alleges that Carrillo did not allow her "to work overtime because she expected the route to be completed in an eight-hour workday without accommodation" and made statements about a younger male employee who was faster at plaintiff's previous route. Id. at 19-20. Finally, she argues that defendant did not reasonably accommodate her and that his reasons were thus pretextual because the modified job offers were often outside of her work restrictions. Id. at 19-20. For example, she was initially provided a custodian job at the San Marino Post Office that did not meet her medical restrictions, and she accepted a modified carrier position and sustained another on-the-job injury when she returned to Arcadia Post Office. Id. at 20; dkt. 36 at 18-19.

Defendant rebuts plaintiff's contentions that the accommodation at the San Marino Post Office was "ineffective" because plaintiff performed work within her restrictions and further worked in a "office manager position" rather than as a custodian. Dkt. 37 at 8. Further, defendant argues that Barajas observed plaintiff deliver mail during a 3999 observation and issued the LOW because of the discrepancy in plaintiff's delivery time, not because of plaintiff's "purported disability," about which Barajas did not know. Id. at 7-9. Moreover, he asserts that Barajas rescinded the LOW when she learned that step count could not form the basis for poor performance. Id. at 9. Finally, defendant argues that plaintiff does not provide evidence to support her claim that the modified job offers were outside her work restrictions. Id.

5. <u>Conclusion</u>

Because plaintiff has failed to raise a genuine issue of disputed fact that defendant failed to reasonably accommodate her disability, the Court grants summary judgment to defendant on plaintiff's disability discrimination claim.

**B.     Plaintiff's Age Discrimination Claim**

Claims of age discrimination are similarly analyzed under the <u>McDonnell Douglas Corp. v. Green</u> standard. <u>See Sheppard v. David Evans & Assoc.</u>, 694 F.3d 1045, 1049 (9th Cir. 2012). Specifically, plaintiff must prove that she (1) was at least forty years old; (2) was performing her job satisfactorily; (3) suffered an adverse employment action; and (4) was "either replaced by [a] substantially younger [employee] with equal or inferior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." Id. (citation omitted); see also Sweeney v. Chang, No. 2:16-CV-07240-CAS-RAOX, 2018 WL 3473962, at *8 (C.D. Cal. July 17, 2018).

Plaintiff alleges that Barajas issued the LOW because plaintiff did not perform her job as quickly as a twenty-five-year-old man. Dkt. 32 at 16. However, defendant reasserts that Barajas issued the LOW because of plaintiff's job performance, and USPS did not replace her with a younger employee. Id. Moreover, defendant contends that a "stray comment" comparing plaintiff to a twenty-five-year-old man would be insufficient to prove age discrimination. Id. at 16-17; see also Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996); Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993).

In opposition, plaintiff asserts that she is over forty years old, has been performing her job satisfactorily since about 1992, and was not issued disciplinary action until the LOW "when she was compared to a younger man that could complete the route at a faster pace." Dkt. 36 at 20. According to plaintiff, when she returned to the Arcadia Post Office, Carrillo requested that she "take a modified job because during her absence a man aged 18-25 had been carrying [plaintiff's] previous route (2403) and he was much faster than [her]." Id. at 21. Plaintiff alleges that Carrillo also told her that Carrillo would similarly be unable "to walk that route as fast as a young man in his early twenties." Id. As such, plaintiff contends that defendant's reasons were pretextual, which is further evidenced by Carrillo's refusal to allow plaintiff to work overtime when the route could be completed without accommodations in the eight-hour workday. Id. In her supplemental opposition, plaintiff asserts that Carrillo "effectively pushed [her] into a modified city carrier position." Dkt. 41 at 15. Further, plaintiff contends that when a plaintiff "presents direct evidence of a discriminatory motive" that is "directly tied to the adverse employment decision," the court does not employ the McDonnell Douglas burden shifting framework. Id.; see also France v. Johnson, 795 F.3d 1170, 1173 (9th Cir. 2015) ("Direct evidence, in the context of an ADEA claim, is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely than not a motivating factor in the employer's decision." (citation and internal quotation marks omitted)).

In reply, defendant contends that plaintiff's only evidence of the alleged age discrimination is "her own uncorroborated testimony." Dkt. 37 at 9. Further, defendant argues that plaintiff cannot establish her prima facie case because she returned to work at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

the Arcadia Post Office and "was not 'either replaced by [a] younger [employee] with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination.'"  Id. (citing Sheppard, 694 F.3d at 1049).

As an initial matter, while the issuance of the LOW may have constituted an adverse employment action, plaintiff conceded in her deposition that the LOW did not have an effect on her employment.[11]  Dkt. 32-6, Blakey Decl., Ex. 1-8.  Thus, plaintiff cannot establish a prima facie case of age discrimination based on the LOW.  Moreover, at the hearing on October 23, 2023, the Court directed plaintiff to present evidence that she has in support of any claim that she was replaced by a younger employee.  According to plaintiff, plaintiff and Carrillo had an agreement about plaintiff's work assignments at the Arcadia Post Office between November 2019, and January 2020.  Plaintiff asserts in both her deposition and her declaration that Carrillo gave plaintiff's route to a younger man who could complete the route faster than plaintiff, but also gave plaintiff eight hours of work within her restrictions.[12]  Dkt. 42, Sebial Decl., Exh. B at 66; dkt. 51 ¶¶ 10-11.  However, plaintiff asserts that because Linares started giving her work that was not within her restrictions, in violation of plaintiff's agreement with Carrillo, she ultimately requested to return to her original Sierra Madre route.  Dkt. 42, Sebial Decl., Exh. B at 66-68.  Although plaintiff may not have been assigned to her original route between November 2019, and January 2020, it appears that plaintiff and Carrillo had agreed that plaintiff would have other work assignments during this time.  Significantly, plaintiff returned to her previously assigned mail route in January 2020.  See dkt. 51 at 4.  Thus, while Carrillo may have made comments suggesting that plaintiff's age impacted her ability to perform her job, plaintiff was not discharged from USPS and was provided with other work assignments.  Further, plaintiff has failed to present evidence that she was replaced by a younger employee on her previously assigned mail route.[13]  As such,

---

[11] "Q. So other than the fact that it bothered you having the warning letter out there for 11 or 12 days, did it have any other effect on your employment?  A. No."  Dkt. 32-6, Blakey Decl., Ex. 1-8.

[12] Plaintiff testified in her deposition that Carrillo stated, "[i]f you like, there's a young guy on your route right now, and he's doing eight hours.  I will give you another job offer so you'll get your forty."  Dkt. 52, Exh. 2 at 65.  Plaintiff agreed to this offer.  Id. at 66.

[13] During her deposition, plaintiff could not provide names for or identify the "younger men" that she referenced.  Dkt. 32-6, Blakey Decl., Exs. 2-16, 2-17.  She further asserted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

plaintiff has not presented evidence of any adverse employment action and thus has not established age discrimination through either direct or circumstantial evidence.  <u>See</u> <u>France</u>, 795 F.3d at 1173 ("[S]tray remarks not directly tied to the decisionmaking process are not direct evidence capable of defeating summary judgment." (citation omitted)).  Accordingly, the Court grants defendant's motion for summary judgment as to plaintiff's age discrimination claim.

### C.    Plaintiff's Retaliation Claim

The <u>McDonnell Douglas Corp. v. Green</u> standard similarly applies to retaliation claims under Title VII.  <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 919 (9th Cir. 1996) ("In a retaliation case, the burden shifting scheme is much the same as that in an age discrimination case") (citing <u>Lam v. University of Hawaii</u>, 40 F.3d 1551, 1559 & n. 11 (9th Cir.1994)).  To establish a claim for retaliation, plaintiff must establish that (1) she engaged in a protected activity pursuant to Title VII; (2) defendant subjected her "to an adverse employment action"; and (3) a causal link exists between the events in (1) and (2).  <u>See Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 646 (9th Cir. 2003).

Defendant first reiterates that there was no adverse employment action for most of plaintiff's complaints.  Dkt. 32 at 17.  Second, defendant argues that plaintiff cannot establish causation, either temporal or actual, because the passage of time between her filing formal complaints and the alleged adverse employment actions "is insufficient to infer causation."  <u>Id.</u>  Finally, defendant argues that plaintiff, as with her disability and age discrimination claims, cannot demonstrate pretext, such that her retaliation claim similarly fails as a matter of law.  <u>Id.</u>

In opposition, plaintiff asserts that filing EEO complaints and requesting an accommodation are protected activities.  Dkt. 36 at 22; <u>see also Ray v. Henderson</u>, 217 F.3d 1234, 1240 (9th Cir. 2000); <u>Coons v. Sec'y of U.S. Dep't of Treasury</u>, 383 F.3d 879, 887 (9th Cir. 2004).  Plaintiff argues that defendant subjected her to adverse employment actions by issuing her a LOW, requesting that she take a modified job, and refusing to reimburse her mileage from her time at the San Marino Post Office.  Dkt. 36 at 22-23; dkt. 41 at 16.  Moreover, plaintiff alleges that, between approximately December 2019, and February 2020, Linares assigned her "more burdensome responsibilities," shared her

---

that she never "chat[ted]" with the "younger, faster male carriers that had worked [her] route before [her]."  <u>Id.</u>, Ex. 2-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

cell phone number with another employee, and blocked her car; Barajas instructed her to do a training "in the middle of the work area," despite knowing that she could not bend over in the manner instructed because of her medical restrictions; and Carrillo informed her that she could not park in the only available handicapped spot in the back of the building and sent her home without providing a job offer because "there was no work available within her restrictions."[14]  Dkt. 36 at 23-24; dkt. 41 at 17.

Plaintiff further contends there was a causal link because Linares and Carrillo knew plaintiff had made EEO complaints, as they had been named as Responsible Management Officials in one of them, and "their knowledge could be imputed to Barajas."  Dkt. 36 at 25.  In her opposition, plaintiff asserts that "Linares sat in and mentored Supervisor Melody Barajas during the investigative interview leading up to the [LOW]."[15]  Id. at 16.  However, in her supplemental opposition, she asserts that Linares and Carrillo merely trained Barajas.  Dkt. 41 at 18.  Plaintiff explains that Carrillo would give instructions to supervisors and that she saw Barajas seek guidance from Carrillo about "interacting with" plaintiff.  Id.  Plaintiff alleges that Linares and Barajas issued the LOW while her EEO, Agency Case No. 4F-913-0005-19, was pending, such that "there was a proximity in time of less than 2 months."  Dkt. 36 at 25 (emphasis omitted).  As such, plaintiff argues that a reasonable jury could find that defendant, aware of plaintiff's EEO complaint, subjected plaintiff to adverse employment actions while two of her EEOs were pending.  Id.

In reply, defendant argues that the mere fact the LOW was issued close in time to some events that form the basis of plaintiff's January 24, 2019 formal complaint cannot establish the required causal link for her retaliation claim.  Dkt. 37 at 10.  According to defendant, plaintiff lacks factual and legal support for her theory that Linares and Carrillo "imputed 'their knowledge' to Barajas," the new supervisor, who alone issued the LOW.

---

[14] Plaintiff attached photographs as exhibits in support of her opposition.  Dkt. 42, Exh. 21.  Regarding the handicapped parking spot, plaintiff alleges that the photographs show that "that other non-supervisors had parked in that area and these other employees were never told they couldn't park there."  Id. at 8.

[15] Plaintiff speculates that Linares mentored Barajas during the investigative interview in plaintiff's declaration, which was not executed under penalty of perjury.  Dkt. 36, Padilla Decl., ¶ 15.  Linares, in his declaration filed under penalty of perjury, denies "hav[ing] any involvement in the issuance of the LOW."  Dkt. 32-4, Linares Decl., ¶ 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

Id.  Defendant argues that Poland v. Chertoff, 494 F.3d 1174 (9th Cir. 2007), is not applicable here where plaintiff has not provided "substantive evidence of bias."  Dkt. 43 at 11.  Finally, defendant argues that "[e]mployers are not prevented from management actions merely because an employee has brought an EEO complaint."  Id. at 10-11.

It is undisputed that plaintiff has engaged in protected activity by filing several EEO complaints, satisfying the first element of her prima facie case of retaliation.  For the second element, plaintiff characterizes the following events as adverse employment actions: (1) the investigative interview and issuance of the LOW on June 26, 2019; (2) her modified job at the Arcadia Post Office after November 13, 2019; (3) Carrillo's refusal to reimburse plaintiff's mileage for the period of time she worked at the San Marino Post Office; (4) Linares' harassing plaintiff by assigning her more burdensome responsibilities; (5) Linares' giving plaintiff's cell phone number to another employee to give plaintiff a direct order on December 3, 2019; (6) Linares' blocking plaintiff's car in a parking spot on December 12, 2019; (7) Barajas' instructing plaintiff to take a training in the middle of the workroom on January 16, 2020; (8) Carrillo's statement that plaintiff could not park in the only handicapped spot available in the back of the building on January 31, 2020; and (9) Carrillo's sending plaintiff home, "claiming that there was no work available within [her] restrictions."  See dkts. 36, 41.  To prove the final element of her prima facie case, plaintiff must show that a causal link exists between her filing EEO complaints and these adverse employment actions.

The Ninth Circuit takes an "expansive view" on what actions constitute adverse employment actions.  Ray v. Henderson, 217 F.3d 1234, 1241-43 (9th Cir. 2000) (holding "that an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity").  As such, the Court finds that the issuance of the LOW would constitute an adverse employment action.  However, plaintiff has failed to demonstrate causation with respect to the issuance of the LOW.  According to her own deposition testimony, plaintiff does not have any personal knowledge that Barajas, or even Linares, knew of plaintiff's prior EEO complaints when Barajas issued the LOW.  See dkt. 42, Sebial Decl., Exh. B at 136.  In her declaration, Barajas asserts that she did not know plaintiff had any medical disability when she issued the LOW for plaintiff's failure to follow instructions and for poor performance.  See dkt. 32-5, Barajas Decl. at 2.  Further, there is no evidence that Carrillo or Linares had expressed an opinion about plaintiff to Barajas.  In fact, Linares asserts in his declaration that, "[o]ther than delivering the LOW, [he] did not have any involvement in the issuance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

of the LOW." See dkt. 32-4, Linares Decl. at 1.  Thus, the Court finds that plaintiff has failed to offer admissible evidence to controvert defendant's showing that there was no causal link made with regard to the LOW.

The other eight alleged events may be viewed collectively for purposes of plaintiff's retaliation claim.  See Flores v. City of Westminster, 873 F.3d 739, 749 (9th Cir. 2017) ("[A]lleged acts of retaliation may be considered collectively to determine whether, taken together, they constitute an adverse employment action under [California Fair Employment and Housing Act].").  Defendant argues that the passage of time between plaintiff's filing her most recent EEO complaint not at issue in this action and her EEO complaint regarding the LOW is "insufficient to infer causation."  Dkt. 32 at 17. Both parties appear to focus on the EEO complaint that plaintiff filed prior to the issuance of the LOW for purposes of their causation analysis.  However, it appears to the Court that the relevant time period is that between when plaintiff initiated her fifth EEO complaint regarding the LOW on July 28, 2019, which she formally filed on November 1, 2019, and the subsequent events that occurred between November 2019, through May 2020.  This passage of time does not appear to be insufficient to infer causation.  See Flores, 873 F.3d at 750 ("[W]e have held that, '[d]epending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation.'" (quoting Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003))); see also Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).  Thus, the Court finds that plaintiff has sufficiently established a prima facie case of retaliation.

Under the McDonnell Douglas framework, the burden then shifts to defendant to articulate nonretaliatory reasons for these employment actions.  Defendant asserts that USPS engaged in the interactive process to accommodate plaintiff's work restrictions, and that as of November 13, 2019, plaintiff could perform her previously assigned mail route.  Regarding Linares' giving plaintiff's phone number to another employee, defendant asserts, and plaintiff does not dispute, that the employee already had plaintiff's personal cell phone number.  Dkt. 32-3, Carrillo Decl. at 4, Ex. 10-23; dkt. 32-4, Linares Decl. at 1.  Regarding his blocking plaintiff's vehicle, Linares explains that he did not know it was plaintiff's vehicle that had occupied his spot in the supervisors' parking lot and that he immediately moved his vehicle to allow plaintiff to exit when she told him. Dkt. 32-4, Linares Decl. at 2, Ex. 1-3.  As for the refresher training, Barajas asserts that plaintiff had told her that plaintiff's "back injury could have been caused by lifting parcels from the mail hamper," and plaintiff was instructed to participate in training

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|----------|--------------------------|------|-----------------|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

"regarding how best to use the mail hamper to prevent injuries." Dkt. 32-5, Barajas Decl. at 2. Barajas explains that the training was supposed to occur on the workroom floor because that is where the mail hampers are located, but that the Job Instructor moved the training to the back dock area at plaintiff's request. Id. at 3. Moreover, she asserts that the Job Instructor gave an identical refresher training on the same day to another employee. Id., Exh. 6. Regarding the handicapped parking spot, Carrillo told plaintiff that the five handicapped spots were not reserved for any employee and that the employee who was parked in the handicapped spot in the back of the building had a valid placard. Dkt. 32-3, Carrillo Decl. at 5, Exs. 11-24, 12-25, 12-26. Finally, regarding Carrillo's sending plaintiff home, defendant argues that plaintiff did not return to work after February 22, 2020, and she never requested a reasonable accommodation. Id. at 6. As defendant has submitted admissible evidence to show several nonretaliatory explanations for these employment actions, which evidence is not controverted by plaintiff, defendant has met his burden.

Finally, the burden shifts back to plaintiff to demonstrate that defendant's reasons are pretextual. In Brooks v. Capistrano Unified Sch. Dist., 1 F. Supp. 3d 1029 (C.D. Cal. 2014), the court explained that "[t]o defeat summary judgment with a showing of pretext, a plaintiff must demonstrate that: (1) the defendant's proffered reason is unworthy of credence; or (2) retaliation was the more likely motivation." Id. at 1038 (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062-63 (9th Cir. 2002)). A plaintiff must present "specific" and "substantial" circumstantial evidence to demonstrate pretext. France, 795 F.3d at 1175. While "a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one," France, 795 F.3d at 1175 (quoting Earl v. Nielsen Media Rsch., Inc., 658 F.3d 1108, 1113 (9th Cir. 2011)) (internal quotation marks and citations omitted), here, plaintiff has not met that burden. Plaintiff does not specifically address defendant's reasons for these employment actions or argue that they are pretextual for purposes of her retaliation claim. She further failed to offer any admissible evidence to show that these claimed adverse employment actions were pretextual. Accordingly, the Court grants defendant's motion for summary judgment as to plaintiff's retaliation claim.

### D.   Plaintiff's Additional Allegations in Other EEO Complaints

Finally, defendant contends that because plaintiff's additional EEO complaints are "unexhausted" because the NEEOISO did not accept and investigate them, the Court should reject the unrelated complaints. Dkt. 32 at 19; see also Green v. Los Angeles Cnty. Superintendent of Sch., 883 F.2d 1472, 1475-76 (9th Cir. 1989) ("Incidents of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:20-CV-11398-CAS (AFMx) | Date | January 2, 2024 |
|---|---|---|---|
| Title | RACHEL PADILLA V. LOUIS DEJOY | | |

discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are 'like or reasonably related to the allegations contained in the EEOC charge.'") (citations omitted). In his supplemental reply, defendant argues that plaintiff's "recitation" of the allegations in her fourth, sixth, seventh, and eighth EEO complaints "demonstrate that they concern different events, different facts, and should not be part of this lawsuit as [p]laintiff initially confirmed that they were not." Dkt. 43 at 12. Moreover, defendant contends that plaintiff's fourth EEO complaint is untimely and time-barred by 29 C.F.R. § 1614.407 because plaintiff failed to file suit within 90 days of the Final Agency Decision, which was issued on January 21, 2020. Id.

Plaintiff argues that her EEO complaints contain claims that are "like or reasonably related" because they similarly involve claims of retaliation and discrimination based on disability and age, and they identify Carrillo and Linares. Dkt. 36 at 26; dkt. 41 at 20. As such, she contends that "[t]aken altogether, the EEO complaints demonstrate a pattern of discriminatory and retaliatory conduct by the [d]efendant." Dkt. 41 at 20.

At the hearing on November 13, 2023, plaintiff asserted that she will not pursue her additional EEO allegations in this case. Accordingly, the Court grants defendant's motion for summary judgment as to plaintiff's additional allegations.

## V.    CONCLUSION

In accordance with the foregoing, the Court GRANTS summary judgment as to all of plaintiff's claims.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |